*DiMartile v. Hochul*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2022

(Argued: February 16, 2023    Decided: September 15, 2023)

Docket No. 21-2988-cv

JENNA M. DIMARTILE, JUSTIN G. CRAWFORD, PAMELLA GIGLIA, JOE DUROLEK,
DAVID SHAMENDA,

*Plaintiffs-Appellants,*

–v.–

KATHLEEN HOCHUL, LETITIA JAMES, MARK C. POLONCARZ, EMPIRE STATE
DEVELOPMENT CORPORATION, ERIE COUNTY DEPARTMENT OF HEALTH,

*Defendants-Appellees.**

B e f o r e :

LIVINGSTON, *Chief Judge*, CARNEY and BIANCO, *Circuit Judges*.

Plaintiffs-Appellants appeal from an order of the United States District Court for
the Northern District of New York denying their motion for attorney's fees under 42

---

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Governor Kathleen Hochul has been
automatically substituted as Appellee in place of Andrew M. Cuomo, the former Governor of
the State of New York.

U.S.C. § 1988. Plaintiffs are two couples, both engaged to be married when they filed suit, and a New York-based minister. Together, the five individuals brought a constitutional challenge to state COVID-19 regulations that, early in the pandemic, limited to fifty the number of attendees at social gatherings, including weddings. After expedited briefing and a hurriedly conducted oral argument, the district court granted Plaintiffs' motion for a preliminary injunction just forty-five minutes before the start time of the first of the two scheduled weddings. The first of the couples married in their planned ceremony and held their wedding celebration involving over 100 guests. Within two weeks of that event, a single judge of this Court issued a temporary administrative stay of the district court's order. Several weeks later, a motions panel of this Court stayed the order pending appeal. A separate panel later dismissed the appeal as moot and vacated the district court's order after the second couple announced that, regardless of the outcome of the appeal, they no longer planned to hold a wedding. All five Plaintiffs then sought an award of attorney's fees in the district court. The district court denied their motion, concluding that they were not prevailing parties under § 1988 and therefore were not eligible for fees. On review, we AFFIRM the district court's order.

AFFIRMED.

———————

R. ANTHONY RUPP III (Phillip A. Oswald, *on the brief*), Rupp Baase Pfalzgraf Cunningham LLC, Buffalo, N.Y., *for Plaintiffs-Appellants*.

FREDERICK A. BRODIE (Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, *on the brief*), *for* Letitia James, *Attorney General for the State of New York*, Albany, N.Y., *for Defendants-Appellees Kathleen Hochul, Letitia James, and Empire State Development Corporation*.

Erin Molisani, Erie County Department of Law, Buffalo, N.Y., for *Defendants-Appellees Mark C. Poloncarz and Erie County Department of Health*.

———————

CARNEY, *Circuit Judge*:

Plaintiffs are five individuals—two couples, each engaged to be married when they filed suit, and a New York-based minister. During the summer of 2020, the five brought a constitutional challenge to New York regulations issued earlier that year in response to the COVID-19 pandemic, limiting to fifty the number of attendees permitted at non-essential gatherings, including weddings. Eight days before the first of the scheduled weddings, the five sought a preliminary injunction in the United States District Court for the Northern District of New York barring enforcement of the limitation as to their planned gatherings. After expedited briefing and a hurriedly conducted oral argument, the district court granted their motion and preliminarily enjoined the State from enforcing its gathering limit against Plaintiffs just forty-five minutes before the wedding ceremony was to begin. *See DiMartile v. Cuomo*, 478 F. Supp. 3d 372, 389 (N.D.N.Y. 2020) (Suddaby, *J.*) ("*PI Order*"). The first couple held their wedding that afternoon. Within a few days, Defendants appealed, and not long after, we granted their request for a stay pending appeal.

After the second couple announced that—regardless of the outcome of the appeal—they no longer planned to hold a wedding, we dismissed the appeal as moot and remanded with instructions to the district court to vacate the preliminary injunction. On remand, all five Plaintiffs moved for attorney's fees. The district court denied their motion, deciding that, under 42 U.S.C. § 1988, none were prevailing parties. All five then timely appealed.

On *de novo* review, we **AFFIRM** the district court's order. Its grant of a preliminary injunction in this case was insufficient to confer prevailing party status on any of the five Plaintiffs, including the couple that married during the brief period in which the preliminary injunction was in effect. Our Court's grant of a stay to Defendants just two weeks after the hurried proceedings in the district court, followed

3

by Plaintiffs' mooting of the appeal, made their victory too fleeting to make them eligible for a fee award under Section 1988.

## BACKGROUND

Plaintiffs Jenna DiMartile and Justin Crawford ("DiMartile and Crawford") and Plaintiffs Pamella Giglia and Joe Durolek ("Giglia and Durolek") are two couples who, during the summer of 2020, were engaged to be married. Plaintiff David Shamenda is a New York-based minister. On July 31, 2020, the five brought suit under 42 U.S.C. § 1983 in the United States District Court for the Northern District of New York against then-Governor Andrew M. Cuomo, Attorney General Letitia James, and Empire State Development Corporation (together, the "State Defendants"), and Mark Poloncarz and Erie County Department of Health (together, the "County Defendants"). They challenged the constitutionality of New York's 50-person gathering limit, which then-Governor Cuomo had temporarily imposed on non-essential gatherings, including weddings, in response to the March 2020 outbreak of the COVID-19 pandemic.

In their suit, they contended that New York's 50-person gathering limit violated their free exercise and free speech rights under the First and Fourteenth Amendments by forbidding them to gather with guests for a religious purpose: their weddings (and, for Minister Shamenda, preventing him from conducting such ceremonies generally). They also advanced the view that the State violated their Fourteenth Amendment rights to equal protection and substantive due process by treating religious conduct (i.e., gathering to witness and celebrate weddings) differently than non-religious conduct (i.e., gathering for restaurant dining, mass demonstrations, and graduations). Plaintiffs also alleged that New York's gathering limit constituted unlawful ultra vires state action and that the actions of Defendants (both State and County) were arbitrary, capricious, an abuse of discretion, and a violation of lawful procedure that entitled

4

Plaintiffs to relief under N.Y. CPLR Article 78.[1] They sought declaratory relief, a permanent injunction barring Defendants from enforcing any attendance number limits on Plaintiffs' own weddings, and a judgment annulling the Governor's 50-person gathering limit and barring Defendants from enforcing the gathering limit altogether.

## I.  The Planned Weddings[2]

The two couples planned their weddings to take place in August 2020 in event spaces at the Arrowhead Golf Club ("Arrowhead") in Akron, New York, not far from Buffalo. DiMartile and Crawford scheduled their 120-guest wedding for August 7 at Arrowhead's Timberlodge venue, and Giglia and Durolek scheduled their 175-guest wedding for August 22 at Arrowhead's Sterling venue. Their wedding plans were thrown into doubt, however, after COVID-19 ignited a global pandemic and when, in an effort to stem the pandemic's spread, then-Governor Cuomo issued a series of executive orders limiting the number of people who were permitted to gather for "non-essential" purposes. These non-essential purposes included wedding celebrations.

The most severe of the statewide restrictions on in-person gatherings applied between March 23 and May 21, 2020, when New York prohibited all non-essential gatherings "of any size for any reason." N.Y. Exec. Order 202.10 (Mar. 23, 2020). In this roughly two-month period, the State completely suspended in-person dining at restaurants and bars. *See* N.Y. Exec. Order 202.3 (Mar. 16, 2020). In late May, the State

---

[1] Article 78 is a "special proceeding" under the New York CPLR that is intended to provide "a speedy correction" of improper state administrative action. *Davidson v. Capuano*, 792 F.2d 275, 280 (2d Cir. 1986). *See generally* N.Y. CPLR 7801 *et seq*.  Whether federal courts may properly exercise supplemental jurisdiction over claims seeking relief under Article 78 is an unsettled question that we need not answer here. *See Doe v. New York Univ.*, 537 F. Supp. 3d 483, 491 (S.D.N.Y. 2021).

[2] Unless otherwise noted, we draw the factual statement in this section from Plaintiffs' July 31, 2020 complaint and attached exhibits. The facts are largely uncontested.

allowed groups of ten or fewer individuals to gather for "any lawful purpose or reason" (provided that participants adhered to social distancing and other health protocols), but it retained the complete ban on indoor dining. N.Y. Exec. Order 202.33 (May 22, 2020).

Just before the start of summer 2020, the State implemented a phased reopening plan, beginning to ease restrictions significantly in most regions within its borders. As of June 16, groups of twenty-five or fewer people were permitted to gather for non-essential purposes, and restaurants in the Western New York region (where Arrowhead is located) were allowed to resume indoor dining at 50% of capacity.

By June 30, Western New York had entered "Phase 4" of the State's reopening plan, and the applicable gathering size limit had increased to 50 people. The State's 50%-of-capacity restriction on restaurant dining, however, remained in place. Under Phase 4 restrictions, Plaintiffs' wedding venues at Arrowhead—the Timberlodge and the Sterling—were authorized to accommodate up to 177 and 219 people, respectively, for food service when operating as restaurants. If the 50%-of-capacity limit on "restaurant dining" applied to the couples' weddings, then, the venues would have been permitted to host both wedding events with the full number of invited guests.[3] Because the 50-person limit applied to weddings, however, the orders required the couples either to reduce the number of invited guests or to postpone their weddings

---

[3] Plaintiffs suggest that, in early July, Arrowhead's co-owner, Lucas James, received mixed signals from the Erie County Department of Health regarding which regulations—the 50%-of-capacity limit on restaurant dining or the 50-person limit on non-essential gatherings—applied to weddings to be hosted at Arrowhead's venues. Appellants' Br. 6–7. Plaintiffs allege that by July 10, 2020, however, James understood that the County would limit weddings to be conducted there to a maximum of 50 individuals. The County does not appear to dispute that this was the position that it adopted in that time frame. The State argues that a local government is not empowered to create exceptions or limit the effects of the governor's COVID-related executive orders and that a single Erie County official's "erroneous" oral statement is "not attributable" to it. State Defendants' Br. 38.

until a time when the orders no longer applied. Happy with neither option, they brought a legal challenge to the 50-person limit seeking immediate relief.[4]

## II.     The Preliminary Injunction Proceedings

Thus, on July 31, just eight days before the scheduled date of the DiMartile-Crawford wedding, Plaintiffs filed their complaint and moved for a temporary restraining order ("TRO") and a preliminary injunction.[5] On August 1, the district court denied the TRO request and directed Plaintiffs to serve their complaint and motion papers on Defendants by 12:00 p.m. on August 3; it also ordered expedited briefing on the preliminary injunction motion.[6] It set 5:00 p.m. on August 5 as the deadline for

---

[4] Plaintiffs do not explain David Shamenda's involvement, if any, in either of the planned weddings. *See* J. App'x at 32 (alleging, generally, that Shamenda "administers the holy rite of marriage and presides over weddings" and that New York's gathering restrictions "impose extreme and insurmountable burdens on [his] free exercise of religion in ministering to his flock"). *See also DiMartile v. Cuomo*, 834 F. App'x 677, 678 n.1 (2d Cir. 2021) (remarking that "it is unclear from the complaint whether [Shamenda] was expected to have any involvement in the planned weddings of the two plaintiff couples").

[5] Six days earlier, DiMartile and Crawford (along with a minister named Bradley Markowski, who is not a party in this litigation) sought to piggyback on an existing case, *Soos v. Cuomo*, which involved a challenge to New York's 25%-of-capacity limit on houses of worship. *See* Motion, *Soos v. Cuomo*, Dkt. 44, 20-cv-00651 (N.D.N.Y. July 24, 2020). DiMartile and Crawford moved to intervene after the *Soos* court granted a preliminary injunction prohibiting New York from enforcing stricter capacity limits against houses of worship than against secular facilities, like offices, retail stores, and salons. *See Soos v. Cuomo*, 470 F. Supp. 3d 268 (N.D.N.Y. 2020). On July 28, the district court (Sharpe, *J.*) denied the motion to intervene in *Soos*, citing "the delay and prejudice to the parties" that would otherwise result. Text Order, Dkt. 50, *Soos v. Cuomo*, 20-cv-00651 (N.D.N.Y. July 28, 2020).

[6] In denying the requested TRO, the district court stated that "Plaintiffs fail[ed] to explain why they waited until eight days before the first scheduled wedding ceremony to file their motion," and concluded that the motion was "unsupported" by a showing of irreparable harm or of a "likelihood of success on the merits" that would necessitate a ruling on a TRO before a ruling on the preliminary injunction motion. *See* Text Order, Dkt. 5, *DiMartile v. Cuomo*, 21-cv-2988 (N.D.N.Y. Aug. 1, 2020).

7

Defendants' response papers, and 11:00 a.m. on Thursday, August 6, as the deadline for Plaintiffs' reply papers. *See* Text Order, Dkt. 5, *DiMartile v. Cuomo*, 21-cv-2988 (N.D.N.Y. Aug. 1, 2020). After Defendants timely appeared and filed their opposition papers, the court ordered the parties to appear via Skype for a hearing on the preliminary injunction motion at 10:45 a.m. on Friday, August 7, the morning of the planned DiMartile-Crawford wedding.

The August 7 hearing concluded at 12:34 p.m. and the court issued its written decision at 4:18 p.m., twelve minutes before DiMartile and Crawford's guests were scheduled to arrive at the venue, and forty-two minutes before the wedding ceremony was to begin. The court enjoined Defendants from enforcing the 50-person limit against Plaintiffs in the conduct of their weddings at Arrowhead. *See PI Order*, 478 F. Supp. 3d at 389. It determined that the couples had shown a likelihood of success on one of their claims: that the 50-person limit violated their equal protection rights by treating the two planned weddings differently than restaurant service at the same facility. *Id.* at 388–89. The district court "caution[ed] that it [was] not implying that *any* wedding (particularly the typical wedding that existed before the COVID-19 pandemic) would be sufficiently similar to a typical dining experience. . . . Rather, [it was] finding that a wedding that follows all the same rules that would be applicable to the given venue for dining when that venue is operating as a restaurant should not be treated differently than a restaurant." *Id*. It thus ordered Plaintiffs "to comply at all times with the relevant health and safety precautions that have been outlined by the State related to the operations of restaurants, including (but not limited to) not having a gathering of individuals that is more than 50-percent of the relevant venue's capacity." *Id*. at 389.

DiMartile and Crawford held their wedding ceremony minutes after the order issued.

## III. The Stay Pending Appeal

On Tuesday, August 11—just two business days after the preliminary injunction issued—the State Defendants noticed their appeal. They also sought a stay pending appeal both in the district court and in this Court. The district court heard argument on Defendants' motion on August 19 and denied the request the same day, explaining that Defendants had "not made a strong showing that they [were] likely to succeed on the merits." *DiMartile v. Cuomo*, 2020 WL 4877239, at *8 (N.D.N.Y. Aug. 19, 2020).

Defendants found success in this Court, however. On August 21—one day before the scheduled date of the Giglia-Durolek wedding—we granted a temporary administrative stay prohibiting enforcement of the district court's preliminary injunction, and on September 8, after hearing oral argument, we entered a full stay pending appeal. The preliminary injunction thus was effective, and only with regard to Plaintiffs, for fourteen days from its entry.[7]

## IV. The Appeal

In January 2021, while the stay was in place, this Court heard arguments on the merits of Defendants' appeal from the preliminary injunction order. Giglia and Durolek had in the meantime informed the Court that they no longer planned to hold a wedding while New York's gathering limits were in effect.[8] They argued that Defendants' appeal was therefore moot, pointing out that DiMartile and Crawford had already married and that Giglia and Durolek's change of plans meant that there were "no longer any pending marriages by or between any of the plaintiffs." Plaintiffs-Appellees' Br. 8, Dkt.

---

[7] The preliminary injunction did not purport to preclude the State from enforcing the 50-person gathering limit against other parties.

[8] This change of plans was revealed to our Court in Plaintiffs' November 2020 merits brief. *See* Appellees' Br. 8, Dkt. 76, No. 20-2683 (2d Cir. Nov. 19, 2020).

76, No. 20-2683 (2d Cir. Nov. 19, 2020); *see also* Joint App'x 952 (advising the State Defendants by letter dated November 10 that the Giglia-Durolek wedding "will not occur while the restrictions remain in place regardless of the outcome of the appeal").

In February 2021, we dismissed the appeal, agreeing that the case had become moot. *See DiMartile v. Cuomo*, 834 F. App'x 677 (2d Cir. 2021). In reaching this conclusion, the panel observed that plaintiffs-appellees "may successfully moot a case if they have changed course and if there is no judgment below, adverse to their opponent, that would remain in effect were the case mooted." *Id.* at 679 (citing *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 283–84, 284 n.1 (2001), *and City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000)). It determined that those requirements had been met, reasoning that "a determination of mootness would not saddle New York with the consequences of an unfavorable district-court decision because federal appeals courts' 'established practice' upon finding a case moot 'is to reverse or vacate the judgment below and remand with a direction to dismiss,'" *id.* (quoting *United States v. Munsingwear*, 340 U.S. 36, 39 & n.2 (1950)), "so as to 'prevent the appellee from insulating a favorable decision from appellate review,'" *id.* (quoting *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 122 (2d Cir. 2001)). The panel then vacated the preliminary injunction order and remanded the case to the district court with instructions to dismiss as moot the claims of the two couples. *Id.*[9] The district court entered a judgment effecting that order in March 2021.

---

[9] With respect to Plaintiff Shamenda, the panel stated that "[his] claims remain pending before the district court," 834 F. App'x at 679 n.2, since they "were based on the Free Exercise Clause of the First Amendment, which was not the basis of the preliminary injunction challenged on this appeal," *id.* at 678 n.1. We "le[ft] it to the district court in the first instance to address those claims, including any issue as to whether they present a case or controversy within the meaning of Article III of the United States Constitution." *Id.* at 679 n.2. After remand, the parties stipulated to a voluntary dismissal of those claims. *See* Fed. R. Civ. P. 41(a)(1)(A)(ii).

10

## V.      The Fee Application

In April 2021, all five Plaintiffs applied under 42 U.S.C. § 1988 for an award of $124,280 in attorney's fees, and $916.50 in costs, arguing that they were "prevailing parties" in the action. The district court rejected their argument and denied their application. *See DiMartile v. Cuomo*, 2021 WL 5071832 (N.D.N.Y. Nov. 2, 2021) ("*Attorney's Fees Order*"). The district court acknowledged that a party may be eligible for an award of attorney's fees under Section 1988 "where the party received a stay or preliminary injunction," *id.* at *6 (citing *Haley v. Pataki*, 106 F.3d 478, 483 (2d Cir. 1997)). But a party is not eligible for such an award, it observed, where the preliminary injunction "is reversed, dissolved, or otherwise undone by the final decision in the same case." *Id.* (quoting *Sole v. Wyner*, 551 U.S. 74, 83–85 (2007)).

The district court concluded that, because this Court's grant of a stay pending appeal effectively "undid" the preliminary injunction, Plaintiffs were not prevailing parties under Supreme Court and Second Circuit precedent. It explained that, in deciding whether to stay enforcement of the preliminary injunction, this Court "would have assessed whether the State Defendants made a strong showing that they were likely to succeed on the merits." *Id.* at *7 (internal quotation marks omitted and alteration adopted). Accordingly, it ruled that, in granting the stay, our Court "made a determination on the merits, meaning the preliminary injunction was reversed, dissolved or otherwise undone by the Second Circuit's imposition of the stay pending appeal." *Id.* (internal quotation marks omitted).

With respect to the fact that DiMartile and Crawford held their wedding ceremony during the pendency of the preliminary injunction, the district court determined that this victory "occurred due to [the district court's] grant of the

[preliminary injunction] mere hours before the DiMartile/Crawford wedding ceremony, leaving the State Defendants no chance to appeal or seek a stay of the preliminary injunction . . . prior to the ceremony." *Id.* Accordingly, "Plaintiffs['] only success in the lawsuit arose from the unique timing at issue in this case. But for the timing of Plaintiffs' motion for preliminary injunction and the [c]ourt's [order], Plaintiffs would have left the court 'empty handed' with no claims of success." *Id.* DiMartile and Crawford's success was thus too "fleeting" to confer prevailing party status under Section 1988. *Id.* at *8.

This appeal followed.

## DISCUSSION

### I.      Legal Standards

Section 1988(b) of title 42 authorizes district courts, in their discretion, to grant "a reasonable attorney's fee" to "the prevailing party" in an action "to enforce a provision" of various statutes, including 42 U.S.C. § 1983. This authority represents an exception to the longstanding "American Rule" that "the prevailing litigant is ordinarily not entitled to collect counsel fees from the loser." *Sole v. Wyner*, 551 U.S. 74, 77 (2007) (internal alterations adopted) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975)). The exception was enacted to help "ensure[] the vindication of important rights . . . by making attorney's fees available under a private attorney general theory" to plaintiffs who succeed in correcting a violation of their civil rights. *Farrar v. Hobby*, 506 U.S. 103, 122 (1992) (O'Connor, *J.*, concurring); *see also City of Riverside v. Rivera*, 477 U.S. 561, 577 (1986) ("Congress enacted § 1988 specifically to enable plaintiffs to enforce the civil rights laws even where the amount of damages at stake would not otherwise make it feasible for them to do so.").

12

As a general matter, we review a district court's decision on a Section 1988 fee application for abuse of discretion. *Haley*, 106 F.3d at 482–83. Whether a litigant is a "prevailing party" within the meaning of Section 1988, however, presents a question of law as to which we review the district court's decision *de novo. Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014); *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 102 (2d Cir. 2009). The fee applicant bears the burden of showing that it is a prevailing party. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

A "prevailing party" is one who obtains "actual relief on the merits" that "alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar*, 506 U.S. at 111–12; *see also Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989) ("The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."). Precedent teaches that "actual relief on the merits" can be something less than a favorable final judgment following a full trial on the merits. *See Hanrahan v. Hampton*, 446 U.S. 754, 756–57 (1980) (determining that the legislative history of Section 1988 showed that "parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief"). But "[n]o material alteration of the legal relationship between the parties occurs," the Supreme Court has instructed, "until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." *Farrar*, 506 U.S. at 113.

The question in this case is whether the preliminary injunction that was entered in Plaintiffs' favor after hasty proceedings, quickly stayed during the pendency of an appeal, and soon thereafter mooted by Plaintiffs' own actions, was sufficient to confer on them prevailing party status. We agree with the district court that it was not.

13

## II. The Preliminary Injunction Reflected the District Court's Assessment of the Merits

In the past, we have held that the grant of a preliminary injunction may suffice to confer prevailing party status on the moving party. *Haley*, 106 F.3d at 483. We explained, however, that to support an award of fees, an order providing such interim relief must at a minimum be "governed by [the district court's] assessment of the merits." *Id.* (citing *LaRouche v. Kezer*, 20 F.3d 68, 72–75 (2d Cir. 1994)).

In *Haley*, we held that the grant of a preliminary injunction sufficed to make the plaintiffs prevailing parties because, after a "close analysis of the decisional circumstances and reasoning underlying the grant of preliminary relief," we were confident that the district court's order reflected a determination that the plaintiffs were likely to succeed on one of their constitutional claims. *Id.* (quoting *LaRouche*, 20 F.3d at 72). Here, relying on *Haley*, Plaintiffs argue that they are prevailing parties because the district court's decision to grant a preliminary injunction rested on a determination that they were likely to succeed on the merits of their equal protection claim.

There is little question that the district court's decision here to issue a preliminary injunction was based on that determination. The district court found that there was a "high degree of similarity" between the use of the Arrowhead venues for ordinary dining and wedding receptions and that, despite this similarity, the two uses were treated differently by Defendants, a differential for which there was "no rational basis." *PI Order*, 478 F. Supp. 3d at 387–88. If the 50%-of-capacity limit was "sufficient to protect the State's interest in preventing the spread of COVID-19 when implemented in restaurants," the court wrote, there could be "no rational reason" why the 50% capacity limit would be insufficient "to protect that interest in a wedding[.]" *Id.* at 388. The court concluded that "a wedding that follows all the same rules that would be applicable to

14

the given venue for dining when that venue is operating as a restaurant should not be treated differently than a restaurant." *Id.* at 388–89.

As we will explain, however, the district court's initial hurried determination that Plaintiffs were likely to succeed on their equal protection claim is insufficient on its own to establish that Plaintiffs are prevailing parties under Section 1988.[10]

### III.     The Preliminary Injunction Order, Which Was Hastily Entered and Quickly Stayed, Did Not Bring About a Material Alteration of the Parties' Legal Relationship

As observed above, to establish that they are prevailing parties under Section 1988, Plaintiffs must demonstrate that the preliminary injunction caused a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n*, 489 U.S. at 792–93. In *Sole v. Wyner*, the Supreme Court specified that "transient" victories—i.e., those that are "reversed, dissolved, or otherwise undone" by a later decision in the same case—will not suffice. 551 U.S. at 78, 83. Even if a district court's order granting a preliminary injunction resulted from a preliminary assessment on the merits, then, the order is not enough to support an award of attorney's fees if it did not alter the relationship between the parties in a meaningful and enduring way.

---

[10] Plaintiff Shamenda is not a prevailing party because neither the district court nor the Second Circuit issued a favorable ruling on the merits of his claim. *See DiMartile*, 834 F. App'x at 678 n.1 (noting that Shamenda's claims "were based on the Free Exercise Clause of the First Amendment, which was not the basis of the preliminary injunction challenged on [] appeal. [Plaintiffs] do not argue that Shamenda's claims have any bearing on . . . any [] issue raised by either side in this appeal."). At oral argument in this Court, Plaintiffs conceded that Shamenda has not received any decision or relief on the merits of his claim and therefore cannot claim prevailing party status.

Plaintiffs argue that the preliminary injunction order that they obtained on the afternoon of August 7 nonetheless suffices because no subsequent decision "called into question" the underlying merits determination before the case became moot on appeal. Appellants' Br. 1. Thus, they urge, the *Haley* analysis controls and the analysis endorsed by the Supreme Court in *Sole* has no application.

We disagree. In *Sole*, the Supreme Court considered whether the entry of a preliminary injunction that barred state officials from enforcing an anti-nudity rule against a plaintiff artist who intended to create, one Valentine's Day, an art installation involving nudity conferred prevailing party status on the plaintiff where the lower court later awarded summary judgment to the defendants. 551 U.S. at 78–81. The Court acknowledged that the plaintiff "got precisely what she wanted when she commenced [the] litigation: permission to create the nude peace symbol without state interference" on Valentine's Day. *Id.* at 83. Nonetheless, it decided that this achievement was not enough, because the plaintiff's "initial victory was ephemeral"—she "gained no enduring change in the legal relationship between herself and the state officials she sued." *Id.* at 86 (internal quotation marks omitted and alterations adopted).

In its analysis, the Court emphasized two points. First, the preliminary injunction proceedings were "hasty and abbreviated," and represented "only the parties' opening engagement." *Id.* at 84. Second, the district court's final ruling on the merits necessarily "superseded the preliminary ruling." *Id.* at 84–85. "At the end of the fray," the Court wrote, the state's anti-nudity rule "remained intact" and the plaintiff had gained no lasting benefit, *id.* at 86; her "initial success [was] undone and she le[ft] the courthouse emptyhanded." *Id.* at 78.

In the matter at hand, the district court itself never had an opportunity to reach a final decision on the merits of Plaintiffs' claims. Because of the claims' later mooting, nor did we. But other considerations that bore on *Sole*'s reasoning apply with some

16

force here, where the preliminary injunction was hastily entered by the district court and where it was quickly undone by this Court's entry of a stay pending appeal. We conclude that under the present circumstances the preliminary injunction entered by the district court effected only the type of ephemeral, transient victory that does not confer prevailing party status under Section 1988.

A.    <u>The Preliminary Injunction Proceedings Were Both Hasty and Abbreviated</u>

The hasty and abbreviated nature of the preliminary injunction proceedings diminishes the weight owed to the district court's preliminary merits assessment in our prevailing party analysis. *See id.* at 84.

Plaintiffs filed suit and moved for the injunction just eight days before the DiMartile-Crawford wedding, even though indoor dining resumed at 50%-of-capacity in the Western New York region on June 16, 2020 (at which time non-essential gatherings remained capped at twenty-five people). The disparate treatment accorded social gatherings and restaurant dining—which animated Plaintiffs' equal protection claim—therefore began six weeks before Plaintiffs filed this suit.[11] Because of their delay in acting, the preliminary injunction was hastily entered and decided only after an extremely abbreviated briefing schedule. Defendants were provided just two days to file their opposition brief after they were served with the complaint and had only two additional days to prepare for the motion hearing. This compressed timeline afforded Defendants "little opportunity to oppose" Plaintiffs' motion. *Id*. As in *Sole*, where the preliminary injunction hearing was held one day after the complaint was filed and one

---

[11] Even accepting Plaintiffs' explanation that Arrowhead's co-owner, Lucas James, did not learn that the 50-person gathering limit would apply to wedding receptions until July 10, 2020, Plaintiffs fail adequately to explain why it took them an additional twenty-one days to file suit in which they sought immediate relief through a TRO.

day before the scheduled art installation, the timing here "allowed no time for discovery, nor for adequate review of documents or preparation and presentation of witnesses." *Id.* Indeed, at the hearing on the morning of the DiMartile-Crawford wedding, neither party presented any witnesses. [12] *PI Order*, 478 F. Supp. 3d at 382. The rapid timeline also restricted the time available for the district court to consider the legal issues underlying Plaintiffs' claims: it had just four hours after the end of the preliminary injunction hearing to render its decision before the wedding would either occur or be halted.

Through no fault of its own, the district court's merits assessment, then, rests on a hurriedly constructed foundation. *See Sole*, 551 U.S. at 84 ("The foundation for [a success on the merits] assessment will be more or less secure depending on the thoroughness of the exploration undertaken by the parties and the court."). It was not the product of thorough briefing and searching review, but the result of relatively "little time and resources." *Id.* We therefore comfortably conclude that, for Section 1988 purposes, Plaintiffs' eleventh-hour success in obtaining a preliminary injunction was

---

[12] Neither party offered proper expert testimony to support their respective positions on the related public health questions until later in the litigation. To their motion for a preliminary injunction, Plaintiffs attached a declaration that a Dr. George Delgado had authored in *Soos*, 2020 WL 3488742, the matter in which DiMartile and Crawford had unsuccessfully tried to intervene. They did not offer an expert declaration of their own, tailored to the facts of this case, until they opposed Defendants' motion for a stay pending appeal. Defendants submitted the declaration of Adrienne V. Mazeau, the Deputy Director of the Office of Public Health at the New York State Department of Health, in opposition to Plaintiffs' motion for a preliminary injunction, but a review of her declaration reveals that she did not offer her opinions on any scientific matter. She instead provided high-level information about the COVID-19 virus, an overview of guidance issued by the Centers for Disease Control ("CDC") on reducing the virus's spread, and a timeline of New York's response to the pandemic. Not until Defendants sought a stay pending appeal did they present the testimony of Dr. Howard Zucker, then the Commissioner of the New York State Department of Health, who offered his expert opinion on the comparative risks of social gatherings, like wedding receptions, and restaurant dining.

provisional and tentative in nature, not material and enduring. *See id.*; *see also Roberts v. Neace*, 65 F.4th 280, 284 (6th Cir. 2023) ("An ill-considered, hastily entered, or tentative injunction points against enduring relief.").

B.      The Preliminary Injunction Was "Undone" by This Court's Stay

The preliminary injunction entered by the district court represented only a "transient victory" for Plaintiffs and did not result in a "material alteration of the legal relationship of the parties" also because the stay that we entered "undid" the effects of the injunction within two weeks of its issuance. *Sole*, 551 U.S. at 78, 82.

Plaintiffs' argument that this Court's stay did not "undo" the preliminary injunction because the injunction allowed one of the plaintiff couples to marry ignores the stay's more extensive practical effects. Because of the stay, the preliminary injunction was exceedingly brief. As we have described, it was never reinstated. *See Roberts*, 65 F.4th at 285 (considering the "longevity" of the interim relief as a factor when determining whether the relief conferred prevailing party status). And, as in *Sole*, the law that Plaintiffs challenged here "remained intact" at the end of the litigation; Plaintiffs thus "gained no enduring change in the legal relationship" between themselves and Defendants with respect to the law that they challenged. *Sole*, 551 U.S. at 86 (internal quotation marks omitted and alterations adopted).

This is particularly true for Giglia and Durolek, who failed to obtain any relief at all from the preliminary injunction.[13] The Supreme Court has been explicit in addressing the prevailing party issue that "[w]hatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. . . . Otherwise the judgment or settlement cannot be said to affect the behavior of the defendant toward

---

[13] It is also true, of course, as to Plaintiff Shamenda. *See* nn. 9 and 10, above.

19

the plaintiff." *Farrar*, 506 U.S. at 111 (internal quotation marks omitted and alteration adopted). Here, Defendants obtained a stay before Giglia and Durolek's planned wedding ceremony on August 22. The litigation for that couple ended when they mooted their own claims during the pendency of Defendants' appeal. In their own words, Giglia and Durolek had "their hopes ripped away" by the stay, Reply Br. 5 n.2, and they then "made the difficult decision to postpone their wedding ceremony indefinitely," Appellants' Br. 16. The preliminary injunction thus did not modify Defendants' behavior towards Giglia and Durolek in a way that provided them with any direct benefit. At the end of the litigation, Giglia and Durolek left the courthouse both emptyhanded and unwed.[14]

The Eighth Circuit's decision in *Doe v. Nixon*, 716 F.3d 1041 (8th Cir. 2013), is persuasive and on point. In *Doe*, the court held that plaintiffs who obtained a preliminary injunction prohibiting enforcement of a Missouri law that was operative annually on October 31[15]—Halloween—were not prevailing parties because on October 30 the defendants secured a stay of the injunction that allowed the law to be enforced as intended on October 31. *Id.* at 1049. The *Doe* court reasoned that the plaintiffs "achieved an even less significant victory with their preliminary injunction than did the plaintiff in

---

[14] Relatedly, the work records that Plaintiffs' attorneys submitted to the district court show that, as early as August 12, 2020, counsel began researching the implications of mootness on their clients' ability to recover fees. From this, Defendants suggest we infer that "plaintiffs' counsel expressly sought" to moot the case "to bolster a claim for fees." State Appellees' Br. 41. While any such motivation may not carry much, if any, weight in the prevailing party decision, it does appear that the goal of recovering fees may have animated Plaintiffs' action mooting the appeal. *See* Joint App'x 953 (time entries in October and November 2020 reflecting research on "availability of attorney[']s fees in case of partial success" and planning "for discontinuance of action and withdrawal of appeal in manner that does not prejudice client's recovery of attorneys' fees").

[15] The law required convicted sex offenders to stay inside on Halloween and post signs outside their homes advising, "No candy or treats at this residence." 716 F.3d 1041, 1045 (8th Cir. 2013).

20

*Sole*," since they were unable to benefit from the judicial relief that the preliminary injunction would have provided absent the stay. *Id.*[16]

Plaintiffs resist the comparison to *Doe*, arguing that unlike the plaintiffs in that case, who were unable to benefit at all from the preliminary injunction, Giglia and Durolek "*could* have married during the two-week period between the entry of the District Court's injunction and the stay order from this Court." Reply Br. 14 (emphasis in original). Even if we accept this proposition,[17] the fact remains that Giglia and Durolek did *not* hold their wedding while the preliminary injunction was in effect, and therefore did not benefit from it. Like the plaintiffs in *Doe*, Giglia and Durolek obtained "a judicial pronouncement without judicial relief." *Doe*, 716 F.3d at 1049. We conclude, then, that they are not prevailing parties under Section 1988.

Although a closer question, we decide that DiMartile and Crawford, too, are not prevailing parties. To be sure, they were able to wed in the presence of more than fifty guests in the hours immediately following entry of the preliminary injunction. But Defendants succeeded in blocking the preliminary injunction at their first opportunity. As the district court observed, Defendants had no earlier chance to block the injunction.

---

[16] The chronology of the *Doe* litigation is analogous to that presented here. The *Doe* plaintiffs obtained a preliminary injunction, whose effect was stayed by the Eighth Circuit pending appeal. After October 31 passed, the Eighth Circuit granted the *Doe* plaintiffs' motion to dismiss the defendants' appeal as moot. *See* 716 F.3d at 1046.

[17] The record suggests that the possibility is theoretical at best: Giglia and Durolek themselves assert on appeal that they "commenced this lawsuit to obtain a preliminary injunction to have a wedding *on a date certain, August 22, 2020*," Appellants' Br. 16 (emphasis added), and the district court's order enjoined Defendants "from enforcing the [50-person gathering limit] against Plaintiffs in the operation of their weddings at the above-referenced venues." 478 F. Supp. 3d at 389. It is not clear to us that the district court intended its narrow order to permit Giglia and Durolek to hold a large wedding on a date other than August 22, 2020. The couple flags nothing in the record as indicating that their chosen wedding venue would have been available to them on a date earlier than August 22.

*See Attorney's Fees Order*, 2021 WL 5071832, at *7. We reject Plaintiffs' argument that, because it "was not a reversal on the merits," the stay order did not undermine the import of DiMartile and Crawford's success in obtaining preliminary relief. Appellants' Br. 25. Their contention overlooks both the practical realities of the situation and that this Court was required to—and did—evaluate Defendants' likelihood of success on the merits as part of the inquiry governing stays pending appeal. *See Agudath Israel of Am. v. Cuomo*, 980 F.3d 222, 226 (2d Cir. 2020) ("To obtain a stay of a district court's order pending appeal, more is required [than obtaining a preliminary injunction], including a strong showing that the movant is likely to succeed on the merits." (internal quotation marks omitted and alteration adopted)).

A stay pending appeal is not a matter of right. To obtain that temporary relief, the party requesting it must show that the circumstances of the case justify the exercise of judicial discretion. *See Nken v. Holder*, 556 U.S. 418, 433–34 (2009). When assessing whether to issue a stay pending appeal, an appellate court must consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 425–26 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). It is well established that the first two factors "are the most critical," *id.* at 434, and that both must be satisfied, *see id.* at 438 (Kennedy, *J.,* concurring) ("When considering success on the merits and irreparable harm, courts cannot dispense with the required showing of one simply because there is a strong likelihood of the other."). To satisfy the "success on the merits" factor, the moving party must show that his chance of success on the merits is more than a "mere possibility." *Id.* at 434.

Although this Court's brief order granting a stay in this case did not detail the panel's analysis, the panel was required to find that the "success on the merits" factor

22

weighed in Defendants' favor before it could exercise its discretion to afford relief. The entry of that order, then, necessarily undermines the district court's preliminary injunction decision, which identified the "success on the merits" factor as favorable to Plaintiffs.[18] In other words, we found cause to exercise our judicial discretion and in doing so, although not rejecting it expressly, surely cannot be understood to have endorsed the legal premise on which the district court centered its analysis.

Plaintiffs rely further on our decision in *Kirk v. New York State Dep't of Educ.*, 644 F.3d 134 (2d Cir. 2011), urging that DiMartile and Crawford are entitled to "keep" their success once they have achieved it by securing a fee award. *Kirk*, however, concerned circumstances quite at odds with those before us. In *Kirk*, the plaintiff successfully challenged a New York state law restricting professional veterinarian licenses to U.S. citizens and lawful permanent residents and obtained a final judgment from the district court requiring the state to issue him a license. *Id.* at 136. New York then issued him a

---

[18] On appeal, Plaintiffs contend that the panel hearing the stay motion "was focused on the lack of harm to the Plaintiffs in continuing the stay, which eliminated the need to consider the merits of Plaintiffs' claims." Appellants' Br. 19. Not only is this contention wrong on the law—this Court was *required* to consider the merits in assessing whether a stay was appropriate—it is also belied by the oral argument transcript from the motion hearing. The Court asked multiple questions about the merits of Plaintiffs' claim and expressed skepticism regarding the district court's conclusion that the challenged regulation could not pass rational basis review. For example, members of the panel questioned whether the district court's emphasis on the similarities that it identified between Plaintiffs' weddings and restaurant dining was "problematic," and suggested that the correct framing was whether the State had a rational basis for distinguishing large social gatherings of any type from ordinary restaurant dining. *See* Oral Argument at 15:07–15:50, No. 20–2683 (Sept. 4, 2020). The panel confirmed with the State that its 50-person gathering limit applied with equal force to weddings and non-religious events, like fundraising dinners and civic banquets, and focused its attention on the differences between planned social gatherings, where guests typically gather for hours and mingle with other guests, and ordinary restaurant dining, where patrons sit at their own tables, do not mingle with other restaurant patrons, and leave after they have finished their meals.

23

license. *Id.* At some point after the state appealed, the plaintiff received permanent resident status, making the state's appeal moot. *Id.*

We distinguished Kirk's case from *Sole*, explaining that Kirk "did not leave court empty handed; he . . . left with an order requiring the [state] to issue him a veterinarian license. . . . [T]hat judicially sanctioned change remains in place to this day because . . . once Kirk received the license, he was entitled to keep it." *Id.* at 138–39. But in *Kirk*, the state neither asked for nor received a stay during the pendency of the appeal. Thus, "no court overturned Kirk's favorable judgment on the merits *or rejected the legal premise of the district court's decision*." *Id.* at 138 (emphasis added).[19] The same is not true here, where Defendants successfully obtained a stay from this Court blocking enforcement of the preliminary injunction. Our stay at least drew into question the district court's likelihood-of-success ruling.

Defendants' success here in obtaining a stay meant that the relief granted to DiMartile and Crawford was inherently transitory. The couple held a single event that exceeded Defendants' 50-person limit on non-essential gatherings for a matter of hours. They did not disrupt the State's gathering limit in any way that could be considered enduring.[20] And even absent the district court's preliminary injunction, DiMartile and Crawford would have been able to wed, albeit in the presence of fewer friends and

---

[19] Another case on which Plaintiffs rely heavily, *Haley* (discussed *supra* in Part II), is distinguishable for a similar reason. Although the defendants in *Haley* asked for a stay pending appeal from this Court, they did not succeed in obtaining one. *See* 106 F.3d at 481.

[20] We note that the Supreme Court in *Sole* found the preliminary injunction insufficient to confer prevailing party status even though the injunction expired on its own terms *after* preventing state officials from interfering with the plaintiff's Valentine's Day nude art installation. 551 U.S. at 80–81. Securing interim relief—even relief that cannot be revisited—is thus insufficient to confer prevailing party status where the merits ruling underlying the decision is undone by a later decision in the same case. *Id.* at 83.

24

family members. The relief that Kirk was entitled to "keep," by contrast, was a veterinary license that, "because of the vagaries of New York's Education Law, could not be revoked" once issued. *Id.* at 136. Thus, Kirk achieved a change in his relationship with the state that continued after litigation ended.

*Kirk* also has limited force here because the plaintiff in that case won at summary judgment "on a fully developed record," while DiMartile and Crawford achieved only provisional relief in the form of a preliminary injunction entered without the benefit of discovery or a full hearing. *See id.* at 138 (explaining that "*Sole* emphasized the unique nature of preliminary injunctions"). This difference is material. As we discuss *supra* in part III.A, DiMartile and Crawford were able to marry in the presence of more than fifty guests at least in part because they delayed bringing suit, resulting in a hurried litigation timeline that enabled them to obtain provisional relief at the threshold of their case just minutes before their wedding was scheduled to start. The district court's decision reflected not a final resolution on the merits, but a "preliminary determination" regarding Plaintiffs' likelihood of success on their equal protection claim. *Id.* The extraordinarily compressed timeline also deprived Defendants of a meaningful opportunity to seek a stay pending appeal before DiMartile and Crawford's wedding. It seems to us reasonable to conclude that, but for their delay, DiMartile and Crawford—like Giglia and Durolek—could well have left the courthouse emptyhanded, forced to choose between delaying their wedding or hosting a celebration with fifty or fewer guests.

In sum, Plaintiffs were able to obtain any relief at all in part because of the delayed initiation of their lawsuit. The order that granted that relief was almost immediately blocked by this Court pending appeal. Plaintiffs fail to point to a single case in which a court determined that a preliminary injunction later stayed pending appeal could confer prevailing party status. Any success obtained by Plaintiffs here was

"ephemeral," not "enduring," *Sole*, 551 U.S. at 86, and did not work the type of "material alteration of [a] legal relationship" that Congress envisioned when it enacted Section 1988, *Texas State Teachers Ass'n*, 489 U.S. at 792–93.

## CONCLUSION

Determining whether a district court's grant of interim relief confers prevailing party status under Section 1988 is often a fact-intensive inquiry. Here, Plaintiffs managed to secure a preliminary injunction with just forty-five minutes to spare after a hasty and abbreviated briefing schedule, the brevity of which was caused largely by their own delay in filing suit. Their initial success was fleeting: Defendants succeeded in obtaining a stay of the injunction from this Court within two weeks of its issuance, and the district court's order was later vacated after Plaintiffs intentionally mooted their claims during the pendency of Defendants' appeal. Given this constellation of factors, the short-lived preliminary injunction in this case does not support a determination that Plaintiffs are prevailing parties eligible for attorney's fees under Section 1988. For these reasons, we **AFFIRM** the judgment of the district court.